# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ANNETTE MONTOYA,**

      **Plaintiff,**

**v.**                                                       **CIV. No. 98-899 JP/WWD**

**LAS VEGAS CITY SCHOOLS,**
**LAS VEGAS, NEW MEXICO,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Annette Montoya is a former employee of Defendant Las Vegas City Schools. Plaintiff claims that Defendant violated Title VII of the Civil Rights Act of 1964 by terminating Plaintiff's employment (or failing to rehire her) because of her pregnancy. This Memorandum Opinion and Order addresses Defendant's Motion for Summary Judgment, filed May 28, 1999 (Doc. No. 55) and Defendant's Motion for Summary Judgment on Plaintiff's Claims for Damages, filed June 3, 1999 (Doc. No. 59).

After a careful review of the law, the briefs, and the exhibits, I conclude that Defendant's Motion for Summary Judgment on Plaintiff's Claims for Damages should be granted, and Defendant's Motion for Summary Judgment should be denied.

## Preliminary Matters

As a preliminary matter, I note that I have been very disappointed at counsel's apparent inability to work together in this case, which has been characterized by many petty disputes and

requests for sanctions by one party against the other.[1]

**Defendant's Motion for Summary Judgment on Plaintiff's Claims for Damages**

Defendant moves for summary judgment on (1) Plaintiff's claim for punitive damages, and (2) Plaintiff's claim for damages for Plaintiff's child's birth defect. In her response to the motion, Plaintiff "relinquishes any claim to punitive damages." Response at 1. Consequently, this portion of the motion should be granted.

With respect to a claim for damages for birth defect of Plaintiff's child, Plaintiff asserts that no such demand has been made, and that such a claim would be appropriate in another lawsuit. Response at 1-2. Similarly, in a Memorandum Opinion and Order entered May 6, 1999, I granted Defendant's motion in limine to exclude evidence of such a birth defect, stating that such evidence was not relevant to Plaintiff's claim of pregnancy discrimination. This portion of the motion should also be granted.

**Defendant's Motion for Summary Judgment**

**A. Facts**

The relevant facts, based on depositions, affidavits, and other admissible[2] evidence on file and viewed in the light most favorable to the Plaintiff, are as follows.

---

[1] Plaintiff asks that I sanction Defendant for referencing portions of Plaintiff's Deposition before Plaintiff's time to read, correct, and sign her deposition had expired. Because Plaintiff did not make any changes to her deposition, there is no prejudice to Plaintiff and her request for sanctions is denied.

[2] On summary judgment, I may consider only admissible evidence. Defendant's Exhibits D, E, J, L, M, N, O, P and Plaintiff's Exhibits 9 and 10 are inadmissible because they are not attached as an exhibit to a deposition or to an affidavit in which they are identified and authenticated. Consequently, I have not considered those exhibits in my determination of the facts in the light most favorable to the Plaintiff.

Plaintiff Annette Montoya worked for Defendant as an intern during the 1994-1995 school year; during this time, Plaintiff taught at Robertson High School. Plaintiff received her teaching certificate in May of 1995. Defendant's Exh. A, Montoya Depo. at 166. Principal Agnes Garcia-Lucero recommended that Plaintiff be hired as a teacher. Id. at 69. Defendant then hired Plaintiff as a second grade teacher at Paul D. Henry elementary school for the 1995-1996 school year. The Principal of Paul D. Henry elementary school was Agnes Garcia-Lucero; the Superintendent for the Las Vegas City Schools was Joseph Padilla.

By the time that the 1995-1996 school year began, Plaintiff was pregnant. Defendant's Exh. A, Montoya Depo. at 76. Plaintiff had a good working relationship with Principal Garcia-Lucero during the 1995-1996 school year, and Principal Garcia-Lucero did not criticize Plaintiff for being pregnant. Id. at 81. Principal Garcia-Lucero recommended that Plaintiff be rehired for the following school year. Defendant's Exh. A, Montoya Depo. at 82. Defendant rehired Plaintiff for the 1996-1997 school year. Id. at 82.

About a month after the beginning of the 1996-1997 school year, Plaintiff learned that she was again pregnant. Id. at 83. Plaintiff informed Principal Garcia-Lucero that she was pregnant on approximately October 1, 1996. Id. at 88. During that school year, Principal Garcia-Lucero became dissatisfied with Plaintiff's performance. In early October, Principal Garcia-Lucero began making a record of Plaintiff's infractions and failures to abide by school rules. Defendant's Exh. B, Depo. of Agnes Garcia-Lucero at 76-78; Defendant's Exh. C. For example, Plaintiff's boyfriend, Mike Nava, and another friend visited Plaintiff at school without checking in at the front office. Defendant's Exh. A, Depo. of Annette Montoya at 21-22, 86, 88, 106. Plaintiff went home sick one afternoon after unsuccessfully trying to find a substitute teacher. When Linda

3

Lockwood, a resource teacher, volunteered to take over Plaintiff's class, Plaintiff sent a note to the school secretary informing her that Plaintiff was leaving for the day. Id. at 98-100. However, Plaintiff did not ask the secretary whether it would be appropriate to have Ms. Lockwood take over Plaintiff's class. Id. at 101-102. On October 16, 1996, Garcia-Lucero walked into Plaintiff's classroom during the time that Plaintiff was scheduled to be teaching bilingual education, and found Plaintiff eating lunch to control her morning sickness. Id. at 102-104, 108, 118; Plaintiff's Exh. 7 at 89-90. On October 21, 1996, because it had snowed Plaintiff wore jeans to school, despite the fact it was a "non-jean" day. Id. at 119-120, 133. On November 5, 1996, Plaintiff was scheduled to have conferences with the parents of her students. However, Plaintiff had a sore throat and called in sick that day. Id. at 135-36. On December 11, 1996, Principal Garcia-Lucero assigned Plaintiff five articles to read and summarize by the following day; however, Plaintiff did not turn in her summaries until a month later. Id. at 143-144. Plaintiff allowed her students to put stickers on their desks, and Garcia-Lurcero asked her to have the students remove the stickers. Id. at 181-82. At some point during the school year, Garcia-Lucero asked Plaintiff, "What are you doing having babies in the middle of your career anyway?" Defendant's Exh. A, Deposition of Annette Montoya at 157.

There is additional evidence in the record that others observed that Plaintiff was not performing well as a teacher. Nancy Mitchell, a teacher whose classroom was across the hall from Plaintiff's classroom during the 1995-1996 and 1996-1997 school years, stated that on several occasions she was forced to enter Plaintiff's classroom because Plaintiff's students were "noisy and running around the classroom" in Plaintiff's absence. Defendant's Exh. G, Affidavit of Nancy Mitchell. Ms. Mitchell asserts that she reported these incidents to Principal Garcia-Lucero.

4

Id. Ms. Mitchell also states that the learning environment in Plaintiff's classroom was not very rich, and that Plaintiff did not prepare many materials for her class bulletin board. Id. However, Plaintiff denies that her class ran wild and states that Ms. Mitchell never observed her class. Plaintiff's Exh. 5, Affidavit of Annette Montoya. One parent whose child was in Plaintiff's class asserts that she observed students in Plaintiff's class running around the room uncontrolled and being noisy. Defendant's Exh. H, Affidavit of Elizabeth Romero Armijo. That same parent was also dissatisfied with her child's test scores and the progress her child made in Plaintiff's class. Id. In addition, Susan Crowell, a teacher at Paul D. Henry Elementary School, states that she observed Plaintiff arrive at work late and leave early during the 1995-1996 school year. Defendant's Exh. K, Affidavit of Susan Crowell. Ms. Crowell asserts that Plaintiff told her that Plaintiff parked on the street so that Principal Garcia-Lucero would not see her arrive late and leave early. Id. However, Plaintiff denies that she ever arrived late to work. Plaintiff's Exh. 5, Affidavit of Annette Montoya. Ms. Crowell observed that Plaintiff's students were usually "off-task" and that many of Plaintiff's former second grade students were unable to complete the third grade course work. Id. Consequently, Plaintiff's former students were assigned to Ms. Crowell's class for slow readers. Id.

 Despite any disagreements or concerns that she had with Plaintiff's performance as a teacher, Principal Garcia-Lucero recommended that Plaintiff be rehired for the 1997-1998 school year. Defendant's Exh. B, Depo. of Agnes Garcia-Lucero at 135-36. Customarily, the principal makes a recommendation to the superintendent as to whether a teacher should be rehired; the superintendent, in turn, makes a recommendation to the school board as to whether a teacher should be rehired. Defendant's Exh. Q, Depo. of Joseph Padilla at 43-44. The school board

makes the final decision as to which teachers are rehired. Id. On the day that the school board was going to meet and decide which teachers would be rehired, Superintendent Joseph Padilla and the incoming Superintendent, Marge Vallejos, called Principal Agnes Garcia-Lucero to discuss Plaintiff. Defendant's Exh. B, Depo. of Agnes Garcia-Lucero at 136-137. In discussing the various teachers with Vallejos, Superintendent Padilla told Vallejos to inquire further about Plaintiff because he recalled receiving information from Principal Garcia-Lucero that Plaintiff was not doing a good job. Defendant's Exh. Q, Depo. of Joseph Padilla at 51-52, 68-69; Defendant's Exh. R, Depo. of Margaret Vallejos at 69-70. Padilla told Principal Garcia-Lucero that after reading documentation in Plaintiff's file, he did not think that Plaintiff was a good investment for the school district. Defendant's Exh. B, Depo. of Agnes Garcia-Lucero at 140-42. It is unclear how the decision not to recommend Plaintiff for rehire was made. According to Superintendent Padilla, incoming Superintendent Marge Vallejos persuaded Principal Garcia-Lucero to reverse her initial recommendation that Plaintiff be rehired. Defendant's Exh. Q, Depo. of Joseph Padilla at 51-54, 68. However, Vallejos never reviewed Plaintiff's personnel file or other documentation before she participated in the decision not to rehire Plaintiff. Plaintiff's Exh. 2, Depo. of Margaret Vallejos at 71, 82. On the other hand, incoming Superintendent Vallejos stated that Superintendent Padilla asked Principal Garcia-Lucero to "think about it" and to be sure about the recommendation she wanted to make. Id. at 82. According to Margaret Vallejos, the decision not to recommend Plaintiff for rehire was arrived at by consensus: "[A]fter a lengthy conference call and discussion back and forth, it was decided that, for all intents and purposes, it would probably be best not to recommend because there wasn't assurance that things were going to change for the better." Id. at 83.

**B. Discriminatory Discharge**

Title VII pregnancy discrimination claims are analyzed by applying the burden-shifting approach of McDonnell-Douglas Corp. v. Green, 411 U. S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of pregnancy discrimination. Id. If a plaintiff can establish a prima facie case, the employer has the burden to come forward with a nondiscriminatory explanation for the action. Id. "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). If the employer presents such an explanation, the burden then shifts back to the plaintiff to show that the employer's reason is mere pretext and is unworthy of belief. Id.

    1. Prima facie case

Plaintiff alleges that she was not rehired by Defendant because of her pregnancy. To establish a prima facie case of pregnancy discrimination, a plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for the position or doing satisfactory work; (3) she was subjected to a material adverse employment action; and (4) she was treated more harshly than similarly situated employees outside the protected class. Randle, 69 F.3d at 451 n.13; Dodd v. Riverside Health System, Inc., 1996 WL 29246 at **2, No. 95-3074 (10th Cir. Jan. 25, 1996)

There is no doubt that Plaintiff was pregnant at the time that Defendant decided not to rehire her, and was therefore a member of a protected class. In addition, Defendant subjected Plaintiff to an material adverse employment action by failing to rehire her for the 1997-1998 school year. However, Defendant disputes whether Plaintiff has met the second and fourth

requirements of the prima facie case.

*(a) Satisfactory work*

In her affidavit, Plaintiff denies that she ever allowed her class to run wild or that she was ever late to work. Plaintiff's Response to Motion for Summary Judgment, Exhibit 5. Plaintiff further states that she did not leave her class unattended or leave the school without getting a substitute, and that she behaved respectfully to others during her tenure with Defendant. Plaintiff explains why she wore jeans on a "non-jean day" and why she did not attend one day of parent-teacher conferences. Plaintiff also attaches a letter signed by parents of some of her former students, which states, "[W]e feel that Ms. Montoya did a very good job in the role she played in our children's lives." Response, Exhibit 8.

This evidence is sufficient to create a genuine issue of material fact as to this prong of the prima facie case. Defendant argues that Plaintiff's performance was unsatisfactory, and therefore Plaintiff cannot prove her prima facie case. However, this prong of the prima facie case dovetails with Defendant's contention that it had a legitimate, non-discriminatory reason for declining to rehire the plaintiff, which is the second part of the McDonnell-Douglas burden shifting analysis.

*(b) Similarly situated non-pregnant employees*

In its Answer to Plaintiff's First Amended Complaint, Defendant acknowledges that Plaintiff was the only teacher in the Las Vegas City Schools who was not rehired for the 1997-1998 school year. Answer to First Amended Complaint (Doc. No. 18) at ¶16. It is reasonable to assume that some of those teachers— who as teachers working in the same school district, were similarly situated to Plaintiff—were not pregnant. Consequently, Plaintiff has met the fourth prong of the prima facie case.

Defendant argues that Plaintiff has failed to meet this prong because she cannot point to another non-pregnant teacher who was rehired despite having identical characteristics and professional shortcomings to those of the Plaintiff. Memorandum in Support of Motion for Summary Judgment at 11-12. However, Defendant cites no supporting authority for the proposition that a "similarly situated" non-pregnant employee must be so narrowly defined.

2. <u>Legitimate non-discriminatory reason</u>

Defendant has successfully set forth evidence that it terminated Plaintiff for a legitimate, non-discriminatory reason. Specifically, the Defendant has enumerated several bases for its dissatisfaction with Plaintiff's job performance, including, *inter alia*, the fact that her boyfriend and friends visited her during class time without checking in at the front office, Defendant's Exh. A, Montoya Depo. at 22-24, 86; Plaintiff called in sick the day of parent-teacher conferences without calling the parents, id. at 135-37; she deviated from her teaching schedule without discussing changes with her supervisor, id. at 104-05; Plaintiff failed to maintain proper discipline in class, Defendant's Exh. F, Affidavit of Nancy Mitchell and Defendant's Exh. H, Affidavit of Elizabeth Romero Armijo; she permitted her students to put stickers on their desks, Defendant's Exh. A, Montoya Depo. at 181; and Principal Agnes Garcia-Lucero received complaints from parents about the Plaintiff's performance as a teacher, Defendant's Exh. F, Affidavit of Nancy Mitchell and Defendant's Exh. H, Affidavit of Elizabeth Romero Armijo. Poor job performance is a legitimate and non-discriminatory reason not to rehire an employee. Because Defendant has met its burden to articulate and produce some evidence that Plaintiff was discharged for a facially legitimate and nondiscriminatory reason, "the presumption of discrimination established by the prima facie showing simply drops out of the picture." See <u>Jones v. Unisys Corp</u>., 54 F.3d 624,

9

630 (10th Cir. 1995) (internal quotation omitted).

    3. <u>Pretext</u>

Plaintiff must now present evidence raising a genuine issue that Defendant's decision not to rehire her was the result of her pregnancy or that the legitimate, non-discriminatory reason offered by Defendant for its decision was a mere pretext. <u>See</u> <u>Jones</u>, 54 F.3d at 630. The Plaintiff's proof of pretext must consist of more than a mere refutation of the Defendant's explanation. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-56 (1981). The plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id</u>. at 256. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 772 (10th Cir. 1988).

In this case, Plaintiff attacks some of Defendant's proffered non-discriminatory reasons directly by either denying them or by pointing to the fact that the dissatisfaction with her job performance began only after she became pregnant a second time. In addition, Plaintiff alleges that Principal Agnes Garcia-Lucero asked her, "What are you doing having babies in the middle of your career anyway?" Defendant's Exh. A, Deposition of Annette Montoya at 157. This

statement constitutes indirect evidence of discriminatory intent.[3] Although standing alone this statement would not be enough to establish pretext, Plaintiff's allegations that Agnes Garcia-Lucero asked her this question—when taken in conjunction with her denial of several of Defendant's proffered non-discriminatory reasons—is a sufficient basis to establish pretext. See Thompson v. La Petite Academy, 838 F.Supp. 1474, 1478 (D.Kan. 1993) (finding that plaintiff's allegation that defendant had told plaintiff that her attitude had worsened since she became pregnant created a question of fact as to whether plaintiff's pregnancy was a motivating factor in her discharge). Consequently, Plaintiff has presented enough evidence of pretext to withstand summary judgment, and Defendant's motion for summary judgment should be denied.

---

[3] Defendant contends that Plaintiff has failed to demonstrate pretext because she has not put forth any direct evidence of discrimination. However, Defendant overlooks the fact that the McDonnell-Douglas burden-shifting approach does not require direct evidence of discrimination. In fact, "the McDonnell-Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Trans World Airlines v. Thurston, 469 U.S. 111, 121 (1984). Indeed, the McDonnell Douglas shifting burdens of proof were designed to allow plaintiffs who had only indirect evidence of discrimination to proceed with their case. See Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990). See also Randle v. City of Aurora, 69 F.3d at 441, 453 (10th Cir. 1995) ("If the plaintiff establishes a prima facie case and shows either that the defendant's facially nondiscriminatory reasons are pretextual or otherwise introduces direct evidence of illegal discriminatory motive, the case then moves to trial . . . .").

IT IS THEREFORE ORDERED that:

(1) Defendant's Motion for Summary Judgment, filed May 28, 1999 (Doc. No. 55) is DENIED;

(2) Defendant's Motion for Summary Judgment on Plaintiff's Claims for Damages, filed June 3, 1999 (Doc. No. 59) is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**